| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 4:18CR197 |
| | § | |
| HAYDEN RICKS | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On March 28, 2019, the Magistrate Judge entered a Report and Recommendation, containing proposed findings of fact and recommendations that Defendant Hayden Ricks's Motion to Suppress be denied (#31). On April 4, 2019, Defendant filed Objections to the Report and Recommendation (#37). On April 5, 2019, the Government filed a Response (#38). Having received the report of the Magistrate Judge, having considered Defendant's objections and the Government's response, and having conducted a de novo review, the Court is of the opinion that the Magistrate Judge's report should be adopted.

### SUMMARY OF MAGISTRATE JUDGE'S REPORT

Defendant seeks suppression of: "(1) the interview/interrogation of the Defendant that was conducted by law enforcement officers on or about September 13, 2018, at the Collin County Courthouse and any and all information obtained therefrom, including passwords or passcodes and all recordings either audio or video made of the interview itself; [and] (2) any and all evidence obtained or derived from the search of the Defendant's cell phone conducted by law enforcement pursuant to a search warrant which required the use of the illegally obtained passwords or

passcodes" (#23 at 1-2). On March 19, 2019, the Magistrate Judge held a full evidentiary hearing on Defendant's Motion, at which Defendant argued the aforementioned evidence should be suppressed because"[t]he statements obtained as the result of the custodial interrogation…should be suppressed as being in violation of the Defendant's due process rights, his right against self-incrimination, and his right to counsel as set out in the Fifth and Sixth Amendments" (#23 at 3). The Magistrate Judge, in recommending denial of the Motion, concluded that no reasonable person in Defendant's position, after the brief questioning at issue, would have believed that his freedom was so restrained that he was in custody for purposes of Miranda, and therefore, Defendant's statements were voluntarily made and not the result of a custodial interrogation. The Magistrate Judge further found that no violation of Defendant's Sixth Amendment rights existed, and that at no time during his interaction with the officers did Defendant personally invoke his right to counsel, and therefore, there was also no Fifth Amendment violation. Furthermore, the Magistrate Judge found that on balance of the relevant factors, Defendant consented to the search of his cell phone. Finally, the Report noted that Defendant had previously agreed as a term of his deferred adjudication to allow any law enforcement to inspect his phone.

**OBJECTIONS TO REPORT AND RECOMMENDATION**

Defendant raises five (5) primary objections to the conclusions by the Magistrate Judge: (1) officers were required to give Defendant his *Miranda* warnings because Defendant was in custody when he was interviewed by the officers; (2) Defendant's Sixth Amendment right to counsel was violated when he was interviewed by the officers because he was represented by counsel in the state case for which he was on probation; (3) Defendant's counsel in the state court case invoked Defendant's right to counsel, and therefore, officers violated Defendant's Fifth

Amendment right when they continued to speak to Defendant; (4) officers deceived Defendant into returning to the courthouse with the power of the court, thereby violating Defendant's Fifth Amendment due process rights; and (5) Defendant did not voluntarily consent to the search of his cell phone.[1] The Government responds that:

> Ricks's objections provide no basis for declining to accept the Report and Recommendations, as written. Indeed, his challenges to the factual findings pertain to statements and testimony by the defendant that are largely irrelevant to the issues before the Court. Ricks's objections to the analysis and conclusions contained in the Report and Recommendations raise no new legal challenges, provide no additional legal support for his position, and offer no precedent contrary to or that undermines the Report and Recommendations.

(#38).

*Defendant Was Not in Custody*

Defendant argues that "[t]he testimony at the hearing shows that the Defendant was in custody at the time of his interrogation and that no *Miranda* warnings were provided to the Defendant prior to his questioning" (#37 at 3); specifically, Defendant contends that the Report erred in finding Defendant was not in custody because:

> the door where the interrogation occurred was closed, he was questioned in the presence of three law enforcement officers, he had to surrender his phone to the officers, he was not able to communicate with either his attorney or family, he was not told that he was free to leave, he was confronted with what the officers indicated was evidence of his guilt, he was told that they were interested in the Defendant's ongoing treatment for any issues associated with state charges involving child pornography, and that he needed to be truthful in his responses to the officers' questions….the officers raised their voices and told the Defendant that he is not being honest with them…the officers first asked where Ricks had been, knowing that he had been to his probation officer who had told Ricks about the contraband located on his phone….at least two of the officers had weapons with them….When his state attorney entered the room to stop the interrogation and

---

[1] Defendant also raises various objections to the factual recitation contained in the Report; to the extent not expressly discussed herein, the Court finds that such objections are hereby overruled.

asked the officers if they were arresting [Defendant], the reply by the officers was-"We're still looking"....Obviously, if [Defendant] [was] free to leave, the officers would have said-"no, he's free to go." The officers did not convey such information to his attorney because at no time was Ricks free to go.

(#37 at 4-5).[2] Upon independent review of the record, the Court finds that Defendant's characterization of the interaction between officers and Defendant as a custodial interrogation is misplaced. As the Report found, Defendant was never restrained and willingly obliged the plain-clothes officers' invitation to talk, the interaction lasted less than twenty minutes in an unlocked conference room located off a busy public hallway. The interaction between Defendant and the officers involved both a congenial discussion of Defendant's animal, as well as pointed questions regarding the images found on Defendant's cell phone; however, to say that the officers raised their voices or threatened Defendant into giving honest answers to their questions is unfounded in the video and audio evidence of the interaction. *See United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015). To Defendant's point that the officers were armed, the Report recognizes such fact, and further indicates that none of the officers brandished their weapons or threatened Defendant with their weapons at any point in the interaction. Finally, the Court is unconvinced by Defendant's argument that if Defendant was indeed not in custody, the officers would have informed him that " he's free to go." The Court is aware of no authority that there are specific words and/or phrases required or even necessary to convey that Defendant was not under arrest. Moreover, while a statement that Defendant was "free to leave" would certainly be relevant to the Court's analysis, its absence is in no way dispositive of the issue of custody. There is likewise no

---

[2] To the extent Defendant further argues that he was in custody and "not free to leave" by virtue of the alleged deception by the bailiff of the state court in securing his return for the interview, such argument is discussed further *infra*.

4

suggestion that Defendant was ever told he had to speak with the officers or was required to answer their questions. On balance, the record demonstrates that Defendant was not in custody, and therefore was not subjected to a custodial interrogation. *See United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006). Defendant's objection is overruled.

*Sixth Amendment Right to Counsel*

The Report further found that Defendant's Sixth Amendment right to counsel was not violated; specifically finding that:

> "the Sixth Amendment only applies to the specific offense with which the suspect has been charged," and therefore, because Defendant was not then-charged with that specific instance of possession of child pornography, whether Shapiro represented him on other matters is inconsequential to whether Defendant's Sixth Amendment rights were violated by any purported continued questioning. *United States v. Carpenter*, 963 F.2d 736, 739 (5th Cir. 1992) ("the invocation of the Sixth Amendment right to counsel, which attaches only after the initiation of adversary judicial criminal proceedings, does not amount to a *per se* invocation of the Fifth Amendment right to have counsel present during custodial interrogations about uncharged offenses") (internal quotation marks omitted). Against this backdrop, the Court finds there was no violation of Defendant's Sixth Amendment rights.

(#31 at 14-15). Defendant asserts that this finding is erroneous because "he did have an attorney representing him in connection with the state case for which he was on probation-the same case for which he had just seen his probation officer and the same case that he had to be in court to reschedule a hearing. The interrogation of Ricks and the searching of his phone could clearly result in the revocation of the felony probation that he was currently on" (#37 at 6). Thus, Defendant advances that the potential for revocation is sufficient to implicate the Sixth Amendment. Defendant is mistaken and advances no authority in support of such position; the Sixth Amendment right to counsel attaches upon the initiation of judicial proceedings. *United States v. Laury*, 49 F.3d 145, 150 (5th Cir. 1995). In other words, "[o]nce the Sixth Amendment

5

right to counsel attaches, law enforcement officials may not initiate interviews in connection with the charged offense." *Id*. As stated in the Report, because Defendant was not then charged with the instant possession of child pornography, his Sixth Amendment right to counsel had not yet attached.[3] Defendant's objection is overruled.

*Fifth Amendment Rights*

Defendant further asserts that the Report incorrectly found that Defendant's Fifth Amendment rights were not violated. Specifically, Defendant argues that "his right against self-incrimination was invoked when his attorney, in the presence of the Defendant and the interrogating officers, said he represented Ricks and asked that all further questioning cease….law enforcement knew, or reasonably should have known that Ricks was represented by an attorney" (#37 at 6-7).[4] The Report rejected this contention, instead finding that Defendant's Fifth Amendment rights were personal, and therefore, could only be invoked by Defendant, and not by Defendant's state counsel. Indeed, the Defendant, not his counsel, must invoke Defendant's right against self-incrimination. *See Textron Fin. Corp. v. Eddy's Trailer Sales Inc.*, CV082289 JFB AKT, 2010 WL 1270182, at *3 (E.D.N.Y. Mar. 31, 2010) ("Gouldsbury himself did not invoke the privilege. Rather, it was his attorney who asserted it on his behalf and instructed him not to answer. It is well established that the Fifth Amendment privilege against self-incrimination is a personal right. Thus, if Gouldsbury believed that a truthful answer was incriminating, he was

---

[3] Furthermore, the record does not reflect that the current charge is inextricably intertwined with the state court charge upon which Defendant was serving deferred adjudication; instead, the record reflects that the instant case involves the possession of new images of child pornography, which, while they may also justify revocation, constitute a new offense. *See Laury*, 49 F.3d at n. 11.

[4] As an initial matter, the Court notes that in light of its finding that Defendant was not in custody, Defendant's right against self-incrimination may only be asserted in a custodial interrogation. *See Brown v. Smith*, CV WDQ-06-1696, 2007 WL 9735470, at *6 (D. Md. Oct. 29, 2007).

required to invoke the right himself; 'counsel is not entitled to instruct [him] not answer on that ground.'") (citing *Calvo v. Donelli*, No. 06–CV–1794, 2007 WL 1288098, at *14 (E.D.N.Y. Apr. 30, 2007) (quoting *Couch v. United States*, 409 U.S. 322, 3281 (1978) (the privilege "adheres basically to the person, not to information that may incriminate him"); *United States v. Ivanson*, 05-CR-113 DLI, 2007 WL 680782, at *6–7 (E.D.N.Y. Mar. 2, 2007) ("the court finds that whether or not [law enforcement] was aware that [defense counsel] had called and requested that [defendant] not be interrogated without counsel is irrelevant to the outcome of the motion. The Supreme Court has stated that 'the privilege against compulsory self-incrimination is. . . a personal one that can only be invoked by the individual whose testimony is being compelled.'") (quoting *Moran v. Burbine*, 475 U.S. 412, 443 n. 4 (1986)); *Gutierrez v. Stephens*, 1:09-CV-22, 2013 WL 12092544, at *22 (S.D. Tex. Oct. 3, 2013). Importantly, Defendant does not contest or otherwise distinguish this line of cases. The record clearly shows that Defendant himself did not invoke his Fifth Amendment right against self-incrimination and/or right to counsel at any time during the interaction. Defendant's objection is overruled.

*Alleged Officer Deception*

Defendant further variously contends that his constitutional rights were violated by the deception of the officers in securing his return to the courthouse, including, but not limited to his "due process rights under the Fifth Amendment to the U.S. Constitution…render[ing] his confession [and his consent to the search of the cell phone] involuntary" (#37 at 8, 10). Specifically, Defendant contends that "[l]aw enforcement used the power and authority of the court to trick Mr. Ricks into returning to the courthouse and to the courtroom so that the officers could get him into a room to interrogate him. Moreover, not only did law enforcement use the power

7

of the court system to deceive Mr. Ricks in order to obtain his presence for his interrogation but also used Mr. Ricks' own lawyer as a part of the deception" (#37 at 8). The record does not reflect, upon consideration of all present circumstances, that the purported deception in persuading Defendant to return to the courthouse induced Defendant's consent to speak with the officers upon his return to the courthouse or allow officers to search his cell phone. Stated another way, there is no indicia that the deception, in context, rendered the consent given by Defendant involuntary. *See United States v. Guidry*, CR 18-414, 2018 WL 6725372, at *6 (E.D. La. Dec. 21, 2018) (citing *United States v. Andrews*, 746 F.2d 247, 248, 250 (5th Cir. 1984) (finding valid consent despite police officer's misrepresentation of purpose to arrest defendant for illegal possession of a firearm when defendant "showed no hesitancy in answering police questions or in otherwise cooperating with the police" and "was not even under arrest and, indeed, had an hour in his own vehicle to reconsider his consent") (abrogated on other grounds); *United States v. Grobstein*, 2016 WL 10587954, at *24 (D.N.M. Mar. 7, 2016) (finding valid consent where DEA officer misrepresented himself as a police officer who made "repeated requests for consent to search" through the "vague and ambiguous description of his purpose as 'security'"). "[B]ecause physical coercion by police is only one factor to be considered in the totality of the circumstances, we should approach psychological coercion the same way." *Id*. (quoting *United States v. Spivey*, 861 F.3d 1207, 1214 (11th Cir. 2017) (citation omitted) (deception by law enforcement as to identity of officer and nature of investigation did not render a suspect's consent to search a home involuntary because it was relatively minor, creating little, if any, coercion); *see also Pagan-Gonzalez v. Moreno*, 16-2214, 2019 WL 1306382, at *7 (1st Cir. Mar. 22, 2019) ("despite the broadly framed objections of courts to deception by known government agents, the general

consensus in the case law is that such deception, including lying about the purpose of an investigation, is not categorically off-limits in obtaining consent to search. The question instead is whether the deception in context rendered the consent involuntary.") (citing *Spivey*, 861 F.3d at 1214) ("fraud, deceit or trickery in obtaining access to incriminating evidence can make an otherwise lawful search unreasonable," but deception by officers relying on their status as government agents "does not always invalidate consent.")).

Important herein, the record demonstrates that the officers did not direct the bailiff to deceive Defendant or that they were otherwise complicit in deceiving Defendant into returning to the courthouse. There is no evidence that the officers were even aware of such deception. Moreover, there is no evidence that any lies about Defendant's legal rights were made, nor were any false promises or threats expressed. Rather, it is clear that the officers, upon approaching Defendant, did not conceal the nature of their investigation or their intention of speaking with Defendant; instead, the officers politely asked Defendant if he was willing to speak with them upon his return to the courthouse. *See United States v. Graham*, 3:13-CR-11-TCB, 2014 WL 2922388, at *9 (N.D. Ga. June 27, 2014) ("courts have held that 'trickery or deceit is only prohibited to the extent it deprives the suspect of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'") (citing *Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) (quoting *Moran*, 475 U.S. at 424)). The bailiff's use of a trick or ruse to cause Defendant to return to the courthouse, by itself, does not render Defendant's consent involuntary; there are no other aggravating circumstances to which Defendant points that would support a finding that Defendant's will was overborne. *See id*. Defendant's objection is overruled.

*Consent to Search of the Cell Phone*

Defendant asserts that the Report erroneously concluded that he voluntarily consented to the search of his cell phone (#37 at 9). "To determine whether a person's consent is voluntary, we consider six factors: (1) the voluntariness of the suspect's custodial status; (2) the presence of coercive police procedures; (3) the nature and extent of the suspect's cooperation; (4) the suspect's awareness of his right to refuse consent; (5) the suspect's education and intelligence; and (6) the suspect's belief that no incriminating evidence will be found." *United States v. Escamilla*, 852 F.3d 474, 483 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 336 (2017) (citing *United States v. Macias*, 658 F.3d 509, 523 (5th Cir. 2011)).

Again, in relation to the first factor, Defendant contends that he was in custody during the interaction; as discussed more in depth *supra*, this is unsupported by the record. Defendant argues "[a]s to the second factor, the presence of coercive police procedures. Defendant would show that misleading the Defendant and the use of the court system to obtain Mr. Ricks presence for the interrogation is a form of coercion." Based upon an independent review of the record, the Court does not find that Defendant's consent was obtained by coercion. *See Guidry*, 2018 WL 6725372, at *6. Regarding the third factor, Defendant avers that "he felt that he had no choice in the situation;" regardless of what Defendant might have thought at the time, the record shows his active participation in complying with the officers' request to view the cell phone. As to the fourth factor, "Defendant objects to the Report finding that the Defendant was aware of his right to refuse consent" (#37 at 13). The Report did not find that Defendant was expressly aware that he was able to refuse consent; rather, the Report concluded that Defendant averred that even had

10

he been aware of his right to refuse consent, as he stated in the video, "he would never have a reason not to consent to such a search." Considering the fifth factor, Defendant asserts that "[a]lthough Ricks is intelligent, the evidence and testimony at the hearing shows that he was nervous and intimidated by the manner in which he was interrogated" (#37 at 13). As the Report found, a person can give a valid and voluntary consent to a search while feeling scared or nervous. *See United States v. Galberth*, 846 F.2d 983, 985, 988, 990 (5th Cir. 1988) (finding consent to search person and bags was voluntary when defendant was "very nervous," "appeared 'scared,'" and was "shaking"). Finally, as to the sixth factor, Defendant argues that he "had been confronted by his probation officer earlier that morning about the search history which contained sites with possible child pornography…Ricks knew that there were images of possible child pornography on his phone as he tells the officers on the video that he deleted the search history and photos on his phone after the probation officer confronted him" (#37 at 14). Although this assertion is true, it is further evidence of Defendant's voluntary consent in light of the fact that throughout the interview Defendant maintained that the images on the phone were not attributable to him, but rather, belonged to his brother. In weighing each of the factors, the Court finds that Defendant voluntarily consented to the search of his cell phone.[5]

## CONCLUSION

After conducting a *de novo* review, the Court concludes that the findings and conclusions of the Magistrate Judge are correct. Accordingly, Defendant's objections are overruled, and the

---

[5] As a final matter, as to Defendant's assertion that the terms of Defendant's probation did not allow the search of his cell phone for the investigation of criminal charges (as opposed to any probationary purpose), the Court finds that there is no such language in the probation agreement limiting search by law enforcement to any particular purpose. Such objection is overruled.

Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this Court. It is **ORDERED** that Defendant Hayden Ricks's Motion to Suppress (#23) is **DENIED**.

    **IT IS SO ORDERED.**

    SIGNED at Plano, Texas, this 5th day of April, 2019.

                                        */s/ Marcia A. Crone*
                                        MARCIA A. CRONE
                                     UNITED STATES DISTRICT JUDGE